UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 17-20740-LENARD-O'SULLIVAN

WILLIAM CASTRO,
     Plaintiff,

v.

JORGE LABARGA,
     *et al*,

     Defendants.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JUSTICES' MOTION TO DISMISS

The Plaintiff, WILLIAM CASTRO ("Castro"), files this Memorandum of Law In Opposition to the Motion to Dismiss and Incorporated Memorandum of Law ("Motion") filed by Defendants Jorge Labarga, R. Fred Lewis, Barbara J. Pariente, Peggy A. Quince, Charles T. Canady, Ricky Polston, and James E.C. Perry[1] (collectively "Defendant Justices") on May 5, 2017. [DE-38]. For the reasons set forth below, the Defendant Justices' Motion requesting dismissal of the Complaint for lack of subject matter jurisdiction and failure to state a cause of action filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, is without merit, and must be denied.

---

[1] Although the instant Complaint names six Defendant Justices and Defendant Justice Lawson (appointed to the Florida Supreme Court on December 16, 2016 by Florida Governor Rick Scott after former Justice James E.C. Perry retired), the Defendant Justices' motion to dismiss seeks dismissal of the Complaint on behalf of those six Defendant Justices and former Justice Perry, not Defendant Lawson. [DE-38] at pgs. 1, 15. In the event counsel for the Defendant Justices cures this mistake, this Memorandum of Law should then be considered responsive to a Motion to Dismiss filed on behalf of all of the Defendant Justices named in this Complaint, including Defendant Justice Lawson.

## BACKGROUND

This lawsuit is ***not*** about either the misdeeds Castro committed over 20 years ago, nor the extraordinary life the Florida Supreme Court has recognized Castro has led since then, nor the rightfulness of that Court's decision permanently denying him readmission to the Bar based on the record before it*,* nor whether the Florida Supreme Court would have decided Castro's Bar admission case differently had it known then of the Board hearing panel's actual two-year denial recommendation or of Defendant Pobjecky's misconduct. Rather, this case concerns the post-judgment discovery of Pobjecky's injurious, egregious misconduct committed in the procurement of that decision, the Florida Supreme Court's refusal to address Castro's federal constitutional claims on the merits, and the Defendant Justices' present and prospective unlawful enforcement of that unconstitutionally-tainted judgment.

However, throughout their Motion, the Defendant Justices wrongly depict this action as nothing more than an attempt by Castro to have this Court review the correctness of the Florida Supreme Court's decision permanently denying Castro admission to The Florida Bar. By doing so, the Defendant Justices would hope to achieve dismissal under the *Rooker-Feldman*[2] doctrine. While all the Defendants want this case to be treated like just another "textbook example of the kind of matter that is precluded from being heard in federal district court", [DE-38] at pg. 6, their attempt to pigeonhole this lawsuit into something that it's not reveals that their real goal is to insure that these serious claims of official judicial misconduct never be heard ***anywhere***. Inexplicably, the Defendant Justices either do not want to know about their former employee's misconduct or do not want it known publicly.

---

[2] *See **District of Columbia Court of Appeals v. Feldman***, 460 U.S. 462 (1983); ***Rooker v. Fidelity Trust Co.***, 263 U.S. 413 (1923).

As set forth in the Complaint, the salient events necessary to determine whether this Court has original subject matter jurisdiction are as follows. After the Florida Board of Bar Examiners conducted a formal hearing upon Castro's application for admission to The Florida Bar on July 15, 2010, [DE-1] at pg. 12, the Executive Director sent a letter to Castro's attorney dated July 22, 2010 advising that Castro's application had been denied and that he could re-apply after two years. [DE-1] at pg. 14. However, in a cover letter dated October 19, 2010, the Executive Director indicated that the enclosed Findings of Fact, Conclusions of Law, and Recommendation contained a different recommendation – permanent denial – than was first reported. [DE-1] at pg. 15. Not knowing how or why the recommendation changed, Castro unsuccessfully appealed the permanent exclusion recommendation to the Florida Supreme Court[3] and petitioned the United States Supreme Court for certiorari review. [DE-1] at pgs. 16, 18, 20.

Subsequently, Castro discovered the existence of a confidential transcript of the formal hearing panel's post-deliberations' announcement of their collective recommendation, which unbeknownst to the Florida Supreme Court or Castro when that Court approved the Board's permanent denial recommendation, indicated that the formal hearing panel had actually denied Castro's application by only a 3-2 vote, with a two-year disqualification for reapplication. [DE-1] at pgs. 20-21. Since it was evident that someone had changed the panel's original decision, Castro filed with the Florida Supreme Court a sealed, *ex parte* motion to vacate the judgment permanently denying him admission to The Florida Bar, alleging that that falsification of the Board's recommendation violated his federal constitutional rights, and requesting an evidentiary hearing to ascertain how this occurred and who was involved. [DE-1] at pgs. 21-22. During the

---

[3] Based on the recommendation that Pobjecky drafted and represented as being the Board's decision, the Florida Supreme Court permanently denied Castro admission to The Florida Bar, affirming the "Board['s] determin[ation] that no amount of rehabilitation would ever be sufficient to warrant readmitting Castro to the Bar." [DE-1] at pg. 17.

course of that litigation, Castro 1) learned that the Board's then General Counsel had committed this fraud, and 2) obtained a Findings Worksheet from the Board's new General Counsel which confirmed that the panel's original recommendation was a denial for two years, not permanent exclusion. [DE-1] at pgs. 25-26. Although these matters were brought to the attention of the Florida Supreme Court, Castro's motion was dismissed as "unauthorized". [DE-1] at pg. 30. In so doing, the Florida Supreme Court refused to "even consider, much less reach the merits of, Plaintiff Castro's federal claims concerning the alleged misconduct committed by the General Counsel of the Florida Board of Bar Examiners." *Id.* A petition for writ of certiorari to the Supreme Court of the United States was then filed, presenting the question whether Castro's procedural and substantive due process rights were violated because the Florida Supreme Court had summarily dismissed his motion to vacate its judgment permanently denying him to admission to The Florida Bar in light of proof that the Florida Board of Bar Examiners fraudulently changed a hearing panel's decision. That Petition was denied. [DE-1] at pg. 31. ***None of the foregoing cases*** -- the original decision permanently denying Castro admission to The Florida Bar nor the denial of the motion to vacate that judgment before the Florida Supreme Court nor the denials of the two petitions for writ of certiorari filed at the United States Supreme Court -- ***considered or adjudicated the merits*** of Castro's claims that his federal constitutional rights were violated by Pobjecky in the procurement of the Florida Supreme Court's judgment or determined the legal effect Pobjecky's misconduct had upon the validity of that judgment.

In a section of their Motion entitled "Background", the Defendant Justices allege that "[i]n June 2016, Plaintiff filed a complaint in this Court against the Justices ***contesting the denial of his readmission to the bar***." [DE-38] at pg. 4 (emphasis added). However, that statement is misleading because it suggests that that Complaint directly challenged the state court judgment

4

denying his readmission to the Florida Bar. It did not. As with the instant Complaint, Castro *does* contest the denial of his readmission to the bar, not because he questions whether that Court wrongfully decided the case based on the record before it, but because Pobjecky's egregious misconduct in the procurement of that judgment unconstitutionally tainted the Florida Supreme Court's decision.

Second, the Defendant Justices represent, as they did in their Motion to Transfer Venue, [DE-32] at pg. 2, that the District Court in *Castro v. Labarga,* Case No. 1:16-cv-22297-JEM "granted the motion to dismiss, in part, and transferred venue to the Northern District of Florida in February 2017, pursuant to 28 U.S.C § 1391(b)(1)." [DE-38] at pg. 4. However, Judge Martinez did *not* transfer venue in that case to the Northern District of Florida pursuant to 28 U.S.C §1391(b)(1) as alleged by the Defendant Justices. Instead, Judge Martinez transferred that complaint to the Northern District, as stated in his Order, ***pursuant to 28 USC §1404(a)***, although neither the Defendant Justices nor Castro argued or briefed the propriety of a transfer pursuant to §1404(a), and neither Magistrate Judge Goodman nor Judge Martinez discussed or balanced the relevant factors to determine if a transfer was justified under that subsection. [DE-41] at pg. 2. Moreover, Judge Martinez' order could not, and did not, consider Pobjecky's residence in the Southern District in transferring that case to the Northern District because Pobjecky was not a named Defendant in that Complaint.

Third, the Defendant Justices contend, as they did in their Motion to Transfer Venue, [DE-32] at pg. 2, that "[t]he complaint in the instant case is nearly identical to the complaint filed in [*Castro v. Labarga,* Case No. 1:16-cv-22297-JEM]." [DE-38] at pg. 4. To the contrary, the instant lawsuit is not nearly -- or remotely -- identical to the action filed against the Defendant Justices in 2016 because the complaint: 1) names Pobjecky as a new party;  2) sues Pobjecky in

his "individual capacity", whereas the Defendant Justices are being sued "in their official capacities"; 3) adds a new count to the prior lawsuit – a count for common law fraud -- lodged only against Pobjecky; 4) seeks monetary relief only against Pobjecky, while seeking prospective, injunctive relief only against all the Defendant Justices; 5) explains why Pobjecky intentionally omitted including the true two-year denial recommendation in the Findings of Fact, Conclusions of Law and Recommendation he drafted and substituted the fabricated language denoting permanent denial [DE-1] at pg. 32; and 6) avers that Pobjecky changed the panel's recommendation because he felt he knew what was right and he did it. [DE-1] at pg. 33.

Fourth, the Defendant Justices represent that "[t]he specific issues [Castro] raises in this Complaint were raised and fully briefed to the Florida Supreme Court, and ultimately the United States Supreme Court, in Plaintiff's motion to vacate *Castro* I." [DE-38] at pg. 10. That is ***absolutely false***. Clearly, there are no bounds, no limits, no rules, which the Defendant Justices believe restrict them from misrepresenting the record in order to deny Castro the opportunity to have his federal constitutional violations heard and adjudicated by this Court. While Castro alleged in his motion to vacate the Florida Supreme Court's judgment that the misconduct committed by the Board violated his federal procedural and substantive due process constitutional rights and requested an evidentiary hearing to "determine how the initial two-year denial recommendation was changed and who was involved or knew about it," [DE-1] at pg. 22, 1) the Florida Supreme Court ***never*** invited briefs or arguments concerning the merits of the alleged violations of Castro's federal constitutional rights but instead ordered Castro to show cause why his motion should not be dismissed as unauthorized, [DE-1] at pg. 23, and 2) the Florida Board of Bar Examiners ***never*** argued or briefed the issue (before either the Florida Supreme Court or United States Supreme Court) whether the Board's misconduct violated

Castro's federal rights, opposed any further inquiry into this matter and advocated that Castro's motion de dismissed as unauthorized. [DE-1] at pg. 24. **The Defendant Justices cannot point to any motion or memorandum filed by any party in any case which briefed the issues raised herein or any court which adjudicated the merits of Castro's federal constitutional claims prior to Castro seeking relief in the United States District Court for the Southern District of Florida.**

## MEMORANDUM OF LAW

### A.  Original Subject Matter Jurisdiction Exists In This Court

#### 1.  The Complaint Is Not Barred By The *Rooker-Feldman* Doctrine

"*Rooker–Feldman* ... is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" **Lance v. Dennis**, 546 U.S. 459, 464 (2006) (citation omitted). This doctrine bars lower federal court jurisdiction where **all** of the following four criteria are met:

> (1) the party in federal court is the same as the party in state court;[4] (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

**Laney v. Slaten**, 2017 WL 1546125, *2 (11th Cir. 2017) (quoting **Storck v. City of Coral Springs**, 354 F.3d 1307, 1310 n. 1 (11th Cir. 2003). Applying the foregoing criteria, this action is **not barred** by the *Rooker-Feldman* doctrine because: 1) the Florida Supreme Court's decision permanently denying Castro admission to The Florida Bar did not consider Pobjecky's

---

[4] Castro is the same party as in the state court proceedings.

misconduct in the procurement of that judgment because it was unknown to that Court and Castro (thus, it could not be deemed "inextricably intertwined" with that judgment); 2) Castro does not seek appellate review by this Court of that judgment to determine whether it was correctly decided by the Florida Supreme Court based on the record before it; 3) the source of the injuries sustained by Castro is Pobjecky's misconduct, not the state court judgment; and 4) the Florida Supreme Court's ruling that Castro's motion to vacate the judgment was "unauthorized" did not constitute an adjudication on the merits of his federal claims.

According to the Defendant Justices' argument, this case should be barred under the *Rooker-Feldman* doctrine because a federal district court can ***never*** acquire original subject matter jurisdiction over a matter litigated in the state court solely because it involves or may affect the validity of a final state court judgment. But that is not the law. What the *Rooker-Feldman* doctrine prohibits is a losing party in state court "from seeking what in substance would be ***appellate review*** of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." ***Johnson v. De Grandy****,* 512 U.S. 997, 1005–06 (1994) (emphasis added). If this Court were to accept the Defendant Justices' broad view that *Rooker-Feldman* is an absolute bar to a federal court acquiring original subject matter jurisdiction where, as here, the Florida Supreme Court refused to consider, much less adjudicate, serious allegations of judicial corruption committed by the General Counsel employed by that Court's admissions agency in the procurement of one of its own judgments, it would unfairly allow *Rooker-Feldman* to be undermined and manipulated by the Defendant Justices, who comprise that Court, to deprive Castro of his due process right to present those claims in any forum, state or federal.

### a. ***Rooker-Feldman*** **Does Not Apply To Preclude District Court From Deciding Federal Claims That Could Have Been Raised In State Court To Vacate Judgment**

In ***Wood v. Orange County***, 715 F.2d 1543, 1547 n. 2 (11th Cir. 1983), the Eleventh held that the *Rooker-Feldman* rationale does not apply to a post-judgment motion to vacate in state court because it is not considered "part of the process of appellate review of the original judgment, [even if a plaintiff] could have raised [his] claims in such proceedings." It stated:

> Because Rule 1.540 proceedings are not part of the process of appellate review of the original judgment, it does not matter for purposes of *Rooker* that plaintiffs could have raised their claims in such proceedings. The federal court may perform a role that a state court deciding a Rule 1.540 motion might also be able to perform. ***But the federal court is not usurping the role of a state appellate court because a state court deciding a Rule 1.540 motion does not act as an appellate court.*** The district court does not violate *Rooker*'s rationale by deciding plaintiffs' claims.... *Rooker* is not a requirement that a plaintiff exhaust all conceivable state remedies; it does not require that where possible he institute proceedings so that state courts can consider the plaintiff's federal claims in the first instance.

*Id*. (emphasis added). Thus, under ***Wood***, original subject matter jurisdiction of Castro's Complaint alleging violations of his federal constitutional rights exists in this Court because any post-judgment motion to vacate the Florida Supreme Court's judgment denying Castro admission to The Florida Bar is not considered part of any appellate process. Accordingly, this Court would not violate *Rooker-Feldman* by deciding the federal claims raised by Castro herein. Moreover, that Castro ***did*** file a motion to vacate that judgment that was summarily dismissed by the Florida Supreme Court as "unauthorized" only further compels this Court to provide a forum for consideration of the merits of those federal claims.

### b. Castro Did Not Have A Reasonable Opportunity To Raise His Federal Claims In State Court

The *Rooker-Feldman* doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined"[5] with the state court's judgment. ***D.C. Court of Appeals v. Feldman***, 460 U.S. 462, 482 n. 16 (1983). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment … or it 'succeeds only to the extent that the state court wrongly decided the issues.'" ***Casale v. Tillman***, 558 F.3d 1258, 1260 (11th Cir. 2009). However, when a plaintiff had no reasonable opportunity to raise his federal claim in state proceedings, that claim is not considered "inextricably intertwined" with the state court's judgment and not barred under *Rooker-Feldman*. ***Powell v. Powell***, 80 F.3d 464, 467 (11th Cir. 1996) (citation omitted). In other words, "even if a claim is inextricably intertwined with [a] state court's judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings." ***Collins v. Erin Capital Management, LLC***, 991 F.Supp.2d 1195, 1202 (S.D.Fla. 2013).

Moreover, if a plaintiff did not have a reasonable opportunity to raise his federal claim in state court, original subject matter jurisdiction would exist in federal district court even if it would effectively nullify a state court judgment. *See **Wood v. Orange County***, 715 F.2d 1543, 1547 n. 2 (11th Cir. 1983) (holding that Court would "no longer follow [a] mechanical formulation of the *Rooker* doctrine" which would bar "federal claims arising out of a state court decision" where the plaintiff had no reasonable opportunity to raise those claims and "the ***effect*** of a federal decision favorable to the plaintiff would be to modify or overturn the state judgment.") (emphasis by court). *Cf. **Cain v. Deutsche Bank Aktiengesellschaft***, 2013 WL

---

[5] "[T]he phrase 'inextricably intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment…" ***Sophocleus v. Alabama Department of Transportation***, 605 F.Supp.2d 1209, 1217 (M.D.Ala. 2009) (citation omitted).

3854250, *2 (N.D.Ill.2013) ("[A]lthough] the claim the plaintiff wishes to bring in federal court may appear to essentially call upon the court to review a state court decision, the plaintiff is saved from dismissal, and federal jurisdiction is retained, where the plaintiff had no reasonable opportunity to bring the claim in state court.") (citing **Wood v. Orange County**, 715 F.2d at 1547).

In **Wood v. Orange County, supra**, the Eleventh Circuit discussed the rationale for this exception to the *Rooker-Feldman* doctrine.

> Where the plaintiff has had no such opportunity, he cannot fairly be said to have "failed" to raise the issue. Moreover, an issue that a plaintiff had no reasonable opportunity to raise cannot properly be regarded as part of the state case. In *Feldman*'s language, the issue that such a plaintiff asks the federal court to decide is not "inextricably intertwined" with the state court's judgment….Stating it another way, because the issue did not figure, and could not reasonably have figured, in the state court's decision, the district court has "original" jurisdiction over the issue as required by 28 U.S.C. § 1331. ***Finally, interpreting Rooker to preclude a federal district court from considering an issue that the plaintiff had no reasonable opportunity to raise in state court might pose due process problems. Such a harsh rule might deprive the plaintiff of any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process***.

*Id.* at 1547 (emphasis added). Moreover, *Rooker-Feldman* "does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits."[6] **Simes v. Huckabee**, 354 F.3d 823, 830 (8th Cir. 2004). *Cf.* **Biddulph v. Mortham**, 89 F.2d 1491, 1495 n.1 (11th Cir. 1996) (although Florida Supreme Court previously denied Biddulph mandamus relief, *Rooker-Feldman* did not bar Biddulph from raising same federal claim raised at Florida Supreme Court because "state mandamus proceeding did not afford Biddulph the kind of 'reasonable opportunity' to raise his federal claim that would preclude

---

[6] Under Florida law, "[a] judgment is on the merits 'when it amounts to a declaration of the law as to the respective rights and duties of the parties based upon the ultimate facts disclosed by the pleadings and evidence and upon which the right of recovery depends." **Vazquez v. YII Shipping Company, Ltd.**, 692 F.3d 1192, 1199 (11th Cir. 2012) (citation omitted).

[court's] independent review of that claim."). Since the Florida Supreme Court's ***dismissal*** of Castro's motion to vacate judgment as "unauthorized" did not determine, as a matter of law, that Castro was not entitled to the relief he sought, it was not a final or conclusive judgment on the merits.[7] *Cf.* ***Streicher v. U.S. Bank National Association***, 666 Fed.Appx. 844, 847 (11th Cir. 2016) (state court's dismissal of foreclosure action for lack of standing was not final adjudication on the merits); ***Vazquez v. YII Shipping Company, Ltd.***, 692 F.3d at 1199 ("Florida court's order dismissing Vasquez's claims under forum non conveniens was not a judgment on the merits because it did not resolve 'the respective rights and duties of the parties.' … Rather, the Florida court refused to exercise jurisdiction over the controversy in order to permit the parties to litigate in another forum.") (citation omitted).

Clearly, since the existence of the misconduct committed by the Board's staff was unknown to the Florida Supreme Court and Castro prior to the issuance of the judgment, it could not have figured in their decision. Moreover, Castro did not have a reasonable opportunity to raise his federal constitutional claims in proceedings before the Florida Supreme Court -- not once, but ***twice***. First, Castro was denied the opportunity to challenge the changing of the Board panel's original two-year denial recommendation to permanent exclusion and to contest such fabrication ***before*** the Florida Supreme Court issued its judgment affirming the fraudulently-procured recommendation because it was done surreptitiously by Pobjecky without Castro's knowledge. Second, Castro was again denied the opportunity to raise his federal claims ***after*** the Florida Supreme Court issued its judgment and Castro learned of this egregious misconduct because that

---

[7] The Defendant Justices cite ***Scheer v. Kelly***, 817 F.3d 1183, 1186 (9th Cir. 2016) for the proposition that "*Rooker–Feldman* applies even where the relevant state court decision is a denial of discretionary review." [DE-38] at pg. 7. However, while a ***denial*** of ***discretionary*** review would constitute a ruling on the merits, the Florida Supreme Court's ***dismissal*** of Castro's motion to vacate as ***unauthorized*** was not.

Court refused to address those serious allegations on the merits in the motion he filed to vacate that judgment. Absent such an opportunity, Castro cannot be said to have failed to raise the federal claims and, if barred under *Rooker–Feldman,* would then be deprived of **any** forum, state or federal.

Original subject matter jurisdiction allows this Court to independently consider the alleged misconduct and the related federal constitutional claims, thereby affording Castro a forum where he could receive the same process and "reasonable opportunity" he should have received in state court. If Castro proves any of the federal claims alleged in his Complaint, this Court could then fashion an equitable remedy, including, but not limited to, enjoining enforcement of and/or vacating the state court judgment.

This Court should not allow the *Rooker-Feldman* doctrine to be cavalierly invoked by interested state court judicial officials opposing adjudication of constitutional claims in federal court after first refusing to determine on the merits a party's allegations of judicial misconduct committed in the procurement of one of their own judgments. Providing Castro with any lesser opportunity in federal court to redress those constitutional violations would deny him his due process right to raise his claims in **any** forum and encourage state courts to avoid considering federal constitutional claims, knowing that if they failed to do so, a litigant in federal court would **never** be able to remedy or undo the harm that he suffered, even if those violations were later proven. Accordingly, this Court should be "loathe to grant less constitutional protection where [a] plaintiff[ ] ha[s] responsibly exercised an opportunity to raise [his] claims and ha[s] been turned away from the state tribunal without so much as an explanation." ***Robinson v. Ariyoshi***, 753 F.2d 1468, 1473 n.3 (9th Cir. 1985), *vacated on other grounds*, 477 U.S. 902 (1986).

### c. The Complaint Alleges That Castro's Injuries Were Caused By Pobjecky's Own Misconduct, Not By the State Court Judgment

The Defendant Justices erroneously argue that the source of Castro's injuries is the state court judgment permanently denying his admission to The Florida Bar. However, central to Castro's position that this Court has original subject matter jurisdiction over his federal claims is that the Complaint seeks only redress for the harm caused by the egregious misconduct committed by Pobjecky which procured the Florida Supreme Court's judgment, not for any injuries directly resulting from that judgment. It requests monetary damages against Pobjecky for violating Castro's federal constitutional rights "in the procurement of the Florida Supreme Court's unlawful judgment permanently denying Plaintiff Castro admission to The Florida Bar", [DE-1] at pgs. 48-49, and "fraudulently procur[ing] the issuance of a judgment by the Florida Supreme Court which affirmed a falsified Board findings and recommendation Defendant Pobjecky drafted." [DE-1] at pg. 49. Nowhere does the Complaint against Pobjecky (or the Defendant Justices) request this Court to review the correctness or wrongfulness of the decision underlying the state court judgment in order to establish liability for his misconduct. *See Gamble v. PinnOak Resources, LLC*, 511 F.Supp.2d 1111, 1117 (N.D.Ala.2007) ("Claims alleging injuries caused by a *defendant's* action rather than the state court decision itself are not barred by *Rooker–Feldman* even if the claims were raised before the state court".) (emphasis by court); *cf. Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2014) (*Rooker-Feldman* doctrine not bar federal claims unless "an element of the claim must be that the state court wrongfully entered its judgment"). Moreover, "a claim may survive *Rooker-Feldman*, despite its success being dependent on the state court having been wrong, where the requested relief indicates that the claim is an independent claim for past misconduct rather than an attack on the judgment itself." *Klayman v. Deluca*, 2016 WL 1045851, *7 (S.D.Fla.2016).

Where, as here, the source of a plaintiff's injuries is the misconduct of an employee of the opposing governmental party in the procurement of a state court judgment and the state court refuses to consider the merits of federal claims relating to that misconduct, a federal court not only has original subject matter jurisdiction to decide the merits of those claims but to order any equitable remedy that the state court was authorized to enter had it adjudicated the plaintiff's claims in the first instance, including "modify[ing] or overturn[ing] the state judgment." ***Wood v. Orange County***, 715 F.2d at 1547 n. 2.

The Defendant Justices also contend that

> while [Castro] names each member of the Florida Supreme Court as a defendant, he brings ***not a single allegation of wrongful conduct by any Justice*** or by the Florida Supreme Court as a whole. The only allegations of malfeasance or misfeasance are made against Defendant Pobjecky and Ms. Gavagni, the two Board officials who Plaintiff claims induced the Board hearing panel to revise its recommended disposition of Plaintiff's case.

[DE-38] at pg. 1 (emphasis added). That representation is untrue. While none of the Defendant Justices are alleged in the complaint of having participated in the actual misconduct committed by Pobjecky, they are accused "in their official capacities in connection with their present and prospective ***unlawful*** enforcement of [the] judgment [permanently denying his admission to The Florida Bar], which violates, and will continue to violate, Plaintiff Castro's federal civil rights." [DE-1] at pg. 7 (emphasis added). Presently, the Defendant Justices continue to embrace and turn a blind eye to the egregious misconduct committed by Pobjecky, its former employee. However, if, and when, Pobjecky's misconduct is proven herein, this Court may grant prospective, injunctive relief against the Defendant Justices to enjoin the continued unlawful enforcement of that unconstitutionally-procured judgment.

15

### 2. The Defendant Justices Do Not Have Eleventh Amendment Immunity

The Eleventh Amendment bars claims for compensatory money damages against state officials named in their official capacities when a party seeks "to impose a liability which must be paid from public funds in the state treasury" because the state is the real party in interest. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Although Castro "does not herein seek any damages award against any Defendant which would be paid from the State of Florida public treasury, directly or indirectly," [DE-1] at pg. 9, the Defendant Justices contend that "[t]his Court also lacks subject matter jurisdiction because the[y] are entitled to Eleventh Amendment immunity in this case." [DE-38] at pg. 11. They argue that the "narrow exception to Eleventh Amendment immunity … created by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908)" is inapplicable because: 1) "Plaintiff does not challenge the constitutionality of the actions of any of the Justices. All the allegations of the complaint are directed to the alleged acts of Defendant Pobjecky and Ms. Gavagni. It is these individuals, and not the Justices, who Plaintiff claims violated his constitutional rights. [DE-38] at pg. 12; and 2) the relief Plaintiff is seeking is not prospective injunctive relief, but "purely retroactive". [DE-38] at pg.12. These arguments fail.

### a. A Claim For Prospective Relief Against the Defendant Justices In Their Official Capacities to Enjoin The Enforcement of Unconstitutional Acts Committed By Others Is Not Barred Under The The Eleventh Amendment

A state official can be sued in his or her official capacity for prospective injunctive relief under Section 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)(citing *Ex parte Young*, 209 U.S. at 159–160). Thus, "[i]f [a] plaintiff asks the federal court to enjoin the official's future unconstitutional conduct, the Eleventh Amendment presents no bar, because unconstitutional actions by state officials cannot be authorized by a state." *Emberg v. University*

*of Maryland University College Asian Division*, 3 F.Supp.2d 1127, 1132 (D.Haw.1998).

In *Luckey v. Harris,* 860 F.2d 1012 (11th Cir. 1988), the Eleventh Circuit articulated the scope of the *Ex Parte Young* exception to the Eleventh Amendment.

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the *Young* court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] *some connection*' with the unconstitutional act or conduct complained of. [W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists.

*Luckey v. Harris,* 860 F.2d at 1015–16 (citing *Ex Parte Young, supra* at 157 (1908)) (emphasis added).[8] "Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct." *Summit Medical Associates, P.C. v. Pryor,* 180 F.3d 1326, 1341 (11th Cir. 1999). *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (notwithstanding assertion by Georgia Secretary of State that he could not qualify, challenge or certify candidates for local boards of education under Georgia's election code, Secretary deemed proper party where plaintiffs sought prospective injunctive relief against Secretary of State in his official capacity, and Secretary, as member of state election board, had power and duty to ensure that local entities complied with Georgia's election code); *Freiberg v. Francois*, 2006 WL 2362046, *6 (N.D. Fla.2006) (district court found lawsuit challenging Florida criminal statute concerning licensing of naturopathic practitioners properly named State Attorney for the Second Judicial Circuit and Secretary of Florida Department of Health to defend statute because each had direct enforcement or regulatory authority).

---

[8] In *Luckey*, the Eleventh Circuit allowed a suit to proceed against Georgia's Governor and the state judges responsible for providing assistance of counsel to indigent criminal defendants where the plaintiffs claimed that systemic deficiencies violated their constitutional rights.

In this case, Defendants are sued in their official capacities because Article V, section 15 of the Florida Constitution vests exclusive jurisdiction in the Florida Supreme Court "to regulate the admission of persons to the practice of law and the discipline of persons admitted". Specifically, Castro has sought prospective injunctive and declarative relief to enjoin the Defendant Justices' present and future unlawful enforcement of the unconstitutionally-tainted Florida Supreme Court judgment as a result of Pobjecky's misconduct. [DE-1] at pg. 6. *See **Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health and Rehabilitative Services***, 225 F.3d 1208 (11th Cir.2000) ("*Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim."); ***Wood**, supra,* at 1549 (rejecting argument by defendants Orange County and Kenneth Kienth, comptroller of Orange County, that they were not proper defendants because they did not cause plaintiffs the allegedly unconstitutional violation of their due process rights by entering liens for the value of legal services provided them in criminal cases by a state public defender because the "deprivation is not complete until the judgment is enforced, and under the governing statute, the county has authority to enforce the judicially created liens."); ***Thomas v. Nicolou***, 2016 WL 491248, *3 (S.D.Ga.2016) ("Plaintiff's claims for injunctive relief [stated a plausible claim] against Defendant Williams [in his official capacity] ... based solely on his position as the Warden of [Georgia State Prison under the *Ex Parte Young* exception even though complaint] d[id] not allege any facts that could lead to the plausible conclusion that Defendant Williams was even aware of his condition or the lack of treatment of that condition"); ***Brenner v. Scott***, 999 F.Supp.2d 1278, 1286 (N.D.Fla.2014) (Florida's Secretary of the Department of Management Services and Florida's Surgeon General were proper defendants

in action by same-sex couples challenging constitutionality of provisions of Florida statutes and Florida Constitution banning same-sex marriage because "an order directed to the Secretary—or, for matters relating to the death certificate, to the Surgeon General—w[ould] be sufficient to provide complete relief.").

### b. The Complaint Is Not Barred Under The Eleventh Amendment Because It Seeks Prospective, Not Retroactive, Injunctive Relief

In "determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" ***Virginia Office for Protection and Advocacy v. Stewart***, 563 U.S. 247, 255 (2011) (citations omitted). A "prayer for injunctive relief that state officials be restrained from enforcing an order in contravention of controlling federal law clearly satisfies [the Court's] 'straightforward inquiry.'" ***Verizon Maryland, Inc. v. Public Service Commission of Maryland***, 535 U.S. 635, 645 (2002). "But the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." ***Id***. at 646. Only "[a]n allegation of an ongoing violation[9] of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." ***Idaho v. Coeur d'Alene Tribe of Idaho***, 521 U.S. 261, 281 (1997).

Without any specific citation to the Complaint, the Defendant Justices mischaracterize the "injunctive relief Plaintiff seeks in his Complaint [a]s purely retroactive". [DE-38] at pg. 12. However, "[t]he existence of a past harm does not convert a prospective injunction into retrospective relief barred under the Eleventh Amendment." ***Buchwald v. University of New Mexico School of Medicine***, 159 F.3d 487, 495 n. 5 (10th Cir. 1998). "The fact that this

---

[9] "A violation is deemed ongoing when its detrimental impact continues into the present." ***Marino v. City University of New York***, 18 F.Supp.3d 320, 333 (E.D.N.Y.2014).

injunction also remedies a past harm does not 'render an otherwise forward-looking injunction retroactive. If it did, the rule allowing prospective relief would be substantially undermined because the need for prospective relief often arises out of a past injury.'" ***Marino v. City University of New York***, 18 F.Supp.3d at 334 (citation omitted).[10] Castro's Complaint requests distinct forms of prospective, not retroactive, relief. Castro's Complaint seeks neither an award of retroactive payments as compensation nor any retroactive declaratory relief. Instead, the Complaint seeks an adjudication of the alleged civil rights violations and prospective injunctive relief against the future enforcement of those ongoing violations of federal law by state officials and the judgment they tainted which, if granted, would end the federal law violations.

Moreover, Castro's requests for either an order admitting him to The Florida Bar or reinstatement to the status of his application to The Florida Bar prior to the commission of Pobjecky's egregious misconduct are also not barred under the Eleventh Amendment. *See, e.g.*, ***Buchwald v. University of New Mexico School of Medicine***, 159 F.3d at 495-6 (unsuccessful medical school applicant, who alleged an ongoing constitutional violation in the form of continued exclusion from the school of her choice, could maintain an action against the two co-chairpersons of the admissions committee, in their official capacities, to the extent she sought a prospective injunction ordering her admission into the school; court concluded that neither defendant was immune from plaintiff's claims insofar as she was seeking a future injunction ordering her admission to the school.). *Cf.* ***Lane v. Central Alabama Community College***, 772

---

[10] *Cf.* ***Flint v. Dennison***, 488 F.3d 816, 825 (9th Cir. 2007) ("the injunctions Flint seeks as related to past violations serve to expunge from University records the 2003 censure and 2004 denial of his Senate seat, which actions may cause Flint harm. Thus, the injunctions sought are not limited merely to past violations: they serve the purpose of preventing present and future harm to Flint. Therefore, they cannot be characterized solely as retroactive injunctive relief and are not barred by the Eleventh Amendment.").

F.3d 1349, 1351 (11th Cir. 2014) ("requests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment."); ***Poindexter v. Department of Human Services***, 946 F.Supp.2d 1278, 1290 (M.D.Ala.2013) (reinstatement returns the plaintiff to the status quo that existed prior to the commission of the due process violations).

### 3. Castro Is Entitled To Injunctive Relief Against The Defendant Justices

The Defendant Justices contend that "[b]ecause Plaintiff brings this case under 42 U.S.C §1983, th[is] Court may not award injunctive relief against the[m]." [DE-38] at pg. 13. While that statute prohibits injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity… unless a declaratory decree was violated or declaratory relief was unavailable", this "provision grants immunity to such officers sued in their ***individual capacities***, whereas defendants in this action are sued solely in their ***official capacities***." ***Eck v. Battle***, 2014 WL 11199420, *6 (N.D.Ga.2014) (citing ***Kentucky v. Graham***, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.")) (emphasis added). *See also **Wolfe v. Strankman***, 392 F.3d 358, 366 (9th Cir. 2004) ("Since [plaintiff] also sued Chief Justice George in his administrative capacity as Chair of the Judicial Council, we conclude that dismissal is not warranted on the basis of judicial immunity.")

Moreover, injunctive relief is available against a judicial officer when performing a duty in their ***enforcement capacity***. Since Defendants, by virtue of their offices, are the only persons responsible under the Florida Constitution for enforcing their judgment permanently denying Castro admission to The Florida Bar, and will continue to enforce that fraudulently-procured judgment unless relief is granted. *See **LeClerc v. Webb***, 419 F.3d 405, 414 (5th Cir. 2012) (court held that Louisiana Supreme Court Justices were not immune from suits for declaratory and injunctive

relief for acts committed in their enforcement capacities). *See also **Supreme Court of Virginia v. Consumers Union of the United States, Inc.**,* 446 U.S. 719, 736 (1980) ("We need not decide whether judicial immunity would bar prospective relief, for we believe that the Virginia Court and its chief justice properly were held liable in their enforcement capacities.").

### 4. The Defendant Justices' Joined in Defendant Pobjecky's Stricken Motion to Dismiss

In their Motion, the Defendant Justices "join in, and adopt, the applicable legal arguments made by Defendant Pobjecky in his Motion to Dismiss, DE 9; specifically, Parts III A, III C. and III D1, and any and all subsequent arguments in support thereof." However, this Court ordered Pobjecky's motion to dismiss [DE-9] stricken on March 27, 2017. [DE-11]. Since Castro did not have to file a response to Pobjecky's stricken motion to dismiss because it was no longer of record, the Defendant Justices' adoption of that stricken motion leaves Castro without any arguments of record applicable to the Defendant Justices to address. However, in the event the Defendant Justices are allowed to cure this error and adopt the same parts contained in Pobjecky's motion to dismiss filed on March 28, 2017 [DE-12], Castro would adopt his responses to Parts III A, III C. and III D1 of Pobjecky's motion to dismiss in their entirety [DE-27], with the following addition.

Disagreeing with Pobjecky's contention that this Complaint was time-barred because it was filed beyond the four-year statute of limitations period, Castro argued that the statute of limitations period of the allegations of misconduct against Pobjecky did not commence "until June 3, 2013 [when] Pobjecky's successor at the Board advised Castro, in a Reply To Petitioner's Response To Order To Show Cause filed at the Florida Supreme Court, that it was Pobjecky who had drafted the Findings of Fact, Conclusions of Law and Recommendation which Castro claimed was fraudulent." [DE-27] at pg. 23. While "[t]he general federal rule is that a

cause of action "will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury," ***Chappell v. Rich****,* 340 F.3d 1279, 1283 (11th Cir. 2003), "[a]n exception to the general rule is the "continuing violation" doctrine….When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." ***Smith v. Shorstein***, 217 Fed.Appx. 877, 881 (11th Cir. 2007).

Castro has alleged in the Complaint that "[u]nless this Court grants declaratory and prospective injunctive relief against the Defendant Justices, [he] will indefinitely continue to be irreparably harmed by the unlawful enforcement of the judgment issued by the Florida Supreme Court permanently denying him admission to The Florida Bar which was fraudulently-procured by Defendant Pobjecky." Since Castro is precluded from ***ever*** reapplying for admission to The Florida Bar, his injury is continuous. Accordingly, the limitation period against the Defendant Justices will not begin to run until their unlawful enforcement of that judgment ceases.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by using the CM-ECF system (jdean@lawfla.com, rtelfer@lawfla.com and William.Stafford@myfloridalegal.com) this 19th day of May, 2017 on James Joseph Dean and Robert J. Telfer III, Attorneys for Defendant Pobjecky, MESSER CAPARELLO, P.A., 2618 Centennial Place, Tallahassee, Florida 32308, and William H. Stafford III, Senior Assistant Attorney General, Attorney for Defendants Labarga, Lewis, Pariente, Quince, Canaday, Polston and Lawson, The Capitol – PL 01, Tallahassee, Florida 32399-1050.

Respectfully submitted,

RATZAN & FACCIDOMO, LLC
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
(305) 374-5730 tel
mycki@rflawgroup.com

BY: */s/ Mycki Ratzan, Esq.*
MYCKI RATZAN, ESQ.
(FBN 915238)

and

ANDREW M. KASSIER, P.A.
Dickman Building
4500 Lejeune Road
Coral Gables, Florida 33146
(305) 662-1000 tel
(305) 661-0909 fax
kassiera@aol.com

BY: */s/Andrew M. Kassier, Esq.*
ANDREW M. KASSIER, ESQ.
(FBN 316547)

Attorneys for Plaintiff